# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00064-TWP-DML |
| | ) | |
| BOYCE, Nurse, and LARA MCNEW, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT
## AND DIRECTING ENTRY OF FINAL JUDGMENT

This matter is before the Court on Defendants Chelsie Boyce's ("Nurse Boyce") and Lara McNew's ("Nurse McNew") (collectively, the "Defendants") Motion for Summary Judgment. (Dkt. 85.) Plaintiff John Sims, ("Mr. Sims"), filed this civil rights action on January 8, 2019. (Dkt. 1.) At all relevant times, Mr. Sims was incarcerated at the New Castle Correctional Facility ("New Castle"). At screening, the Court allowed Eighth Amendment claims to proceed against thirteen defendants. (Dkt. 16.) Claims against eleven of those defendants were resolved by stipulation, (Dkt. 81), leaving only claims of denial of water against Nurse Boyce and Nurse McNew and a claim of deliberate indifference to a serious medical need against Nurse Boyce. For the reasons explained in this Entry, the Defendants' Motion for Summary Judgment is **granted.**

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). The court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hospitals Corp.* 892 F.3d 887, 893 (7th Cir. 2018). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. FACTUAL BACKGROUND

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Sims as the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Chelsie Boyce is a registered nurse (RN) licensed to practice medicine in the State of Indiana. During all times relevant to the Complaint, Nurse Boyce was employed by Wexford of Indiana, LLC ("Wexford"), as a registered nurse. Nurse Boyce's responsibilities at New Castle varied depending upon her assignment during a particular shift. (Dkt. 87-2, ¶¶ 1-3.) However, one of her most common responsibilities was to distribute medication to offenders in order to ensure they received their prescribed medication ordered by their treating physicians. *Id.*

2

Depending on the shift and Nurse Boyce's particular assignment, she could be responsible for distributing medication to over one hundred (100) offenders during a shift. *Id.* When necessary, she had the ability to remove an offender from his cell to assess him for further medical treatment if she believed it was required. *Id.*

As a registered nurse, Nurse Boyce did not have the authority to order specific treatment plans or provide prescription medication to patients without first consulting with a supervising physician and receiving orders to do so. *Id.*, ¶ 5. She also did not have the ability or authority to turn on or off the water anywhere in the facility. *Id.*, ¶ 6. This type of request would need to be submitted through Indiana Department of Correction ("IDOC") custody staff. *Id.*

On the morning of April 20, 2018, Nurse Boyce distributed two (2) of Mr. Sims' medications to him. *Id.*, ¶ 7; Dkt. 87-1 at 1. Nurse Boyce does not recall whether Mr. Sims' reported to her that the water was off in his cell. (Dkt. 87-2, ¶ 7.) If Mr. Sims had reported that the water was off in his cell, however, Nurse Boyce would have told him that nursing staff cannot control the water access. *Id.*

Nurse Boyce distributed prescription medications to Mr. Sims again on the morning of April 21, 2018. *Id.,* ¶ 8; Dkt. 87-1 at 1. Mr. Sims told her he wanted to be seen by medical staff. (Dkt. 87-2, ¶ 8.) She reminded Mr. Sims that if he wanted to meet with a member of the medical unit for additional medication or treatment, he would need to submit a healthcare request form as required by IDOC policy. *Id.* Mr. Sims asserts that he was experiencing a medical emergency on the morning on April 21, 2018; however, Nurse Boyce does not recall him displaying any symptoms that would have alerted her to a medical emergency that required removing him from his cell during medication distribution. *Id.* Nurse Boyce made sure that Mr. Sims had access to healthcare request forms. *Id.* If the water had been off in Mr. Sims' cell during a medication pass,

medical staff would have provided a cup of water with the meds being administered. *Id.,* ⁋ 9.

Lara McNew is a licensed practical nurse (LPN) licensed to practice medicine in the State of Indiana. (Dkt. 87-3, ⁋ 1.) During all times relevant to the Complaint, Nurse McNew was employed by Wexford as an LPN. *Id.,* ⁋ 2. Nurse McNew was responsible for assisting in the delivery of patient care within the Indiana LPN scope of practice at New Castle. *Id.* She administered medications and interventions for offenders in accordance with physician instructions and worked directly under the supervision of the Registered Nurses. *Id.,* ⁋ 2.

As an LPN, Nurse McNew's responsibilities varied depending on her assignment during a particular shift; however, she often distributed medication to offenders as prescribed by their physicians. *Id.,* ⁋ 3. At times, Nurse McNew could be responsible for distributing medication to over one hundred (100) offenders during a shift. *Id.* If Nurse McNew believed it was required, she had the ability to remove an offender from his cell to assess him for further medical treatment in an emergency situation. *Id.*

As an LPN with Wexford, Nurse McNew did not have authority to order specific treatment plans or provide prescription medication to patients without first consulting with a supervising physician and receiving orders. *Id.,* ⁋ 5. She also did not have authority to turn on or off the water anywhere in the facility. *Id.,* ⁋ 6. This type of request would need to be submitted through IDOC custody staff in order to be successfully addressed. *Id.*

Although Nurse McNew was on-site at New Castle on the evening of April 19, 2018, she was not the medical provider who distributed medication to Mr. Sims that evening. *Id.,* ⁋ 8; Dkt. 87-1. Similarly, although she was on-site at New Castle on the evening of April 20, 2018, Nurse McNew was not the medical provider who distributed Mr. Sims' medication that evening. (Dkt. 87-3, ⁋ 9; Dkt. 87-1.) She does not recall having any face-to-face contact with Mr. Sims between

4

April 19 and April 21, 2018.  (Dkt. 87-3, ⁋ 10.)  Thus, she has no personal knowledge whether Mr. Sims' water was, in-fact, turned off between April 19 and April 21, 2018. *Id.*, ⁋ 12.

Mr. Sims was incarcerated at New Castle from January 2018 through April 2019.  (Dkt. 87-4 at 5.)  The water was turned off in his cell from April 19, 2018 through April 21, 2018.  *Id.* at 13.  During this time, Mr. Sims was housed in the Mental Health Unit.  *Id.* at 15.  He did not have any contact with Nurse Boyce or Nurse McNew on April 19, 2018.  *Id.* at 14-15.

Mr. Sims testified that he is suing Nurse Boyce because on the morning of April 20, 2018, his water was turned off and he "was dehydrated and stuff." *Id.* at 12-13.  Mr. Sims wanted Nurse Boyce to let the officers know that his water had been turned off.  *Id.* at 13.  He also wanted her to pull him out of his cell and ensure that he was okay but admits that nurses only pull you out if it is an emergency.  *Id.* at 12-14, 19, 28, 37.  When he complained about the water being turned off, Nurse Boyce told Mr. Sims that it was a custody issue and there was nothing she could do about it. *Id.* at 18.

Mr. Sims testified that he saw Nurse McNew on the evening of April 20, 2018 and that he told her he needed to be pulled out of his cell to be checked because he had no water.  *Id.* at 15.  He is "pretty sure" but "not a hundred percent sure" that she gave him his medication that night. *Id.* at 27.  Mr. Sims acknowledges that Nurse Boyce and Nurse McNew did not have the ability to turn the water on or off in his cell but believes it was their job to let "custody" know that the water was off.  *Id.* at 20, 26.

Mr. Sims admits that the medical staff likely did not think he had a medical emergency during the time that he says his water was shut off.  *Id.* at 23.  He was getting constipated.  *Id.*  He acknowledges that he was not in serious danger during the time his water was turned off but believed there was a possibility that something bad could happen.  *Id.*  The water was back on in

his cell on the morning of April 21, 2018. *Id.* at 25-26. Mr. Sims suffered a rash and constipation from the water being turned off, and emotional distress. *Id.* at 29-30. He suffered no long-term harm. *Id.* at 37.

On August 22, 2018, the Tort Claims Investigator at New Castle, Neal Fetz, wrote a letter to Mr. Sims regarding the water in his cell. *Id.* at 31-32. After a review with staff members, Mr. Fetz concluded there was no record that the water in Mr. Sims' cell (MH7-709) was shut off from April 19, 2018 through April 22, 2018, nor was there any evidence that the offender in the next cell (MH7-710) flooded his cell on April 19, 2018. (Dkt. 1-2.) Mr. Sims states, however, that custody officer Sergeant Saylor acknowledged to him in a discovery response that he turned the water off because Mr. Sims was threatening to throw body fluids on people around his cell. (Dkt. 87-4 at 32-33.) That discovery response is not part of this record.

### III.  DISCUSSION

At all relevant times, Mr. Sims was a convicted prisoner. This means that the Eighth Amendment applies to his claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). In the screening Entry, the Court allowed a conditions of confinement claim to proceed against both nurses and a deliberate indifference to a serious medical need claim to proceed against Nurse Boyce.

### A.  Conditions of Confinement Claims

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citation and internal quotations omitted). Pursuant to the Eighth Amendment, prison officials have the duty to provide humane conditions of confinement: "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and

must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal quotation omitted).  To succeed on a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must demonstrate that 1) he was incarcerated under conditions that posed a substantial risk of objectively serious harm, and 2) the defendants were deliberately indifferent to that risk, meaning were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (citing cases).

As noted, to satisfy an Eighth Amendment conditions-of-confinement claim, a plaintiff must establish an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019).  The objective showing means "that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Id.* (internal quotation omitted).  "According to the Supreme Court, … 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting *Hudson*, 503 U.S. at 9).  "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and [t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (internal quotation omitted).  After showing the objective component, a plaintiff must next establish "a subjective showing of a defendant's culpable state of mind," and "the state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Id.* (internal quotation omitted).  In addition, negligence or even gross negligence is not sufficient to support a § 1983 claim. *Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018).

It is disputed whether the water in Mr. Sims' cell was actually turned off from the evening of April 19 until the morning of April 21, 2018, but for purposes of the Motion for Summary Judgment the Court will credit Mr. Sims' version of the facts and assume that the water in his cell had been turned off for more than 24 hours. Mr. Sims testified that the water had been turned off because an officer believed Mr. Sims had threatened to throw bodily waste on people. (Dkt. 87-4 at 32.) Mr. Sims also testified that the water was turned off because the inmate in the cell next to his "flooded his range." *Id.* Nonetheless, the record is undisputed that neither nurse had the ability to turn the water off or back on. Mr. Sims believes they could have done more to help him get the water turned back on by telling custody staff that the water was off. He thought there was "a chance that they'll listen to a medical provider and could have got the water turned back on." *Id.* at 29.

Mr. Sims was hoping that the nurses might have more sway over custody staff in urging that his water be turned back on, but the nurses had no responsibility to do so while they distributed medication to over a hundred offenders. In addition, there is no evidence that Mr. Sims could not or did not direct his concerns to the appropriate custody staff. He was not without other means to make custody staff aware of his situation.

No reasonable jury could find that the nurses believed Mr. Sims was facing a substantial risk of serious harm. In addition, no reasonable jury could find that by not relaying his concerns to custody staff the nurses acted unreasonably. The nurses had no reason to believe Mr. Sims could not complain to custody staff himself. Accordingly, Nurses Boyce and McNew are entitled to judgment as a matter of law on Mr. Sims' conditions of confinement claims.

**B.    Deliberate Indifference Claim**

To prevail on an Eighth Amendment deliberate indifference to a serious medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer*, 511 at 837; *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011).   "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson."  *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).  "[M]inor pains" do not constitute serious medical conditions.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009).

Assuming for purposes of this Entry that Mr. Sims saw Nurse McNew on the evening of April 20, 2018, there is no evidence that he, in fact, was experiencing a serious medical need or that Nurse McNew should have believed he was.  At most, he had a rash and some constipation. He testified that he wanted her to "[c]heck me out for my vitals to make sure I'm not dehydrated from not having no water or my constipation and stuff."  (Dkt. 87-4 at 27-28.)  No reasonable jury could find that Mr. Sims had an objectively serious medical condition at that time.  Absent a serious medical need, Nurse McNew could not be found deliberately indifferent.  Nurse McNew is entitled to judgment as a matter of law on the deliberate indifference claim.

## IV.   CONCLUSION

The Motion for Summary Judgment filed by Nurses Boyce and McNew, (Dkt. [85]), is **GRANTED.**  Mr. Sims' *pro se* Motion requesting status of the Motion for Summary Judgment, (Dkt. [97]), is **GRANTED** to the extent this ruling is issued.

Judgment consistent with this Entry, the Stipulation of Dismissal as to other defendants, (Dkt. 81), and the screening Entry of May 8, 2019, (Dkt. 16), shall now issue.

**SO ORDERED.**

Date:  1/13/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John Sims, #232621
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only


Douglas R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com